# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHEM CARIRERS, L.L.C.                           CIVIL ACTION NO.

VERSUS                                          19-436-SDD-SDJ

L. ENERGY INTERNATIONAL, LLC

## RULING

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] filed by Defendant and Counter-Plaintiff, L. Energy International, L.L.C ("LEI"). Plaintiff and Counter-Defendant, Chem Carriers, L.L.C. ("Chem Carriers") filed an *Opposition*,[2] to which LEI filed a *Reply*.[3] Chem Carriers also filed a *Motion for Partial Summary Judgment*.[4] LEI filed an *Opposition*,[5] to which Chem Carriers filed a *Reply*.[6] For the following reasons, the Court finds that both parties' *Motions* should be granted in part and denied in part.

## I. BACKGROUND

This is a maritime case for breach of charter. The Court's jurisdiction is pursuant to Fed. R. Civ. P. 9(h). On December 18, 2018, Chem Carriers and LEI entered into a charter agreement from January 2019 through May 2019.[7] Under the charter agreement, Chem Carriers supplied a towing vessel, the M/V Miss Danielle, and two steel barges for

---

[1] Rec. Doc. No. 60.
[2] Rec. Doc. No. 63.
[3] Rec. Doc. No. 68.
[4] Rec. Doc. No. 61.
[5] Rec. Doc. No. 65.
[6] Rec. Doc. No. 66.
[7] Rec. Doc. No. 63-1, p. 1.

68792

six months at a rate of $7,850 per day, plus fuel, lubes, and certain taxes and fees.[8] The M/V Miss Danielle and towing barges transported LEI's ultra-low sulfur diesel between the ports of Corpus Christi and Brownsville/Harlingen, Texas.[9] Under the charter agreement, Chem Carriers' equipment "always remain[ed] in the control and custody of [Chem Carriers]" and Chem Carriers maintained "sole[] responsib[ility] for the operation, maintenance, and improvement of its [e]quipment."[10] LEI paid the day rate through January and February 2019; LEI did not pay the day rate from March through May 2019.[11] LEI refused to pay Chem Carriers' invoices for March through May because it alleged that, due to pilot error and inclement weather, the M/V Miss Danielle spent 23 days dry docked during that time.[12] Chem Carriers asserts that it transported LEI's cargo through May 31, 2019, the date specified in the charter agreement, but LEI contends that Chem Carriers only transported its cargo through May 17.[13] The parties dispute which of them, if either, terminated the charter early. Despite this simple nucleus of operative facts, the present procedural posture is relatively complex.

After the charter ended, Chem Carriers filed suit for breach of charter. Chem Carriers seeks a total of $1,143,734.09 plus interest on the unpaid charter hire. This figure is comprised of $733,301.71 in unpaid charter hire, fuel, lubes, and expenses; $235,500 in lost charter hire caused by the early termination of the charter agreement; $88,045.50 in rudder repair costs; $86,886.88 in reimbursement for invoice credits that were not due under the charter agreement; and attorneys' fees under La. R.S. 9:2781 and 28 U.S.C. §

---

[8] Rec. Doc. No. 61-1, p. 1; Rec. Doc. No. 65-1, p. 1.
[9] *Id*.
[10] Rec. Doc. No. 60-2, p. 1; Rec. Doc. No. 63-1, p. 2.
[11] Rec. Doc. No. 60-2, p. 1–2; Rec. Doc. No. 63-1, p. 2.
[12] Rec. Doc. No. 60-2, p. 2; Rec. Doc. No. 63-1, p. 3.
[13] Rec. Doc. No. 61-1, p. 2; Rec. Doc. No. 65-1, p. 1.

1927.[14] LEI counterclaimed for $1,080,527.00 in profits it allegedly lost due to Chem Carriers' allegedly derelict performance.[15]

Chem Carriers moves for summary judgment on its claims for the unpaid charter hire and the interest thereon—but not the lost charter hire based on the early termination of the charter agreement.[16] Chem Carriers also moves for summary judgment on LEI's claim for lost profits.[17] LEI moves for summary judgment on Chem Carriers' claims for attorneys' fees; the rudder repair costs; and the interest on the unpaid charter hire.[18] LEI also moves for summary judgment arguing that Chem Carriers cannot recover the day rate for the days during the charter when the M/V Miss Danielle was dry docked or otherwise not in service—but does not move for summary judgment on the remainder of the unpaid charter hire. The Court will analyze each parties' *Motion* separately, except where indicated.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[19] This determination is made "in the light most favorable to the opposing party."[20] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the

---

[14] Rec. Doc. No. 61-2, p. 3, n. 6.
[15] Rec. Doc. No. 61-2, p. 3; Rec. Doc. No. 24, p. 6.
[16] Rec. Doc. No. 61-2, p. 3, n. 6.
[17] Rec. Doc. No. 61-2, p. 11.
[18] Rec. Doc. No. 60-1, p. 1.
[19] FED. R. CIV. P. 56(a).
[20] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

nonmovant's case.'"[21] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[22] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[23]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24] All reasonable factual inferences are drawn in favor of the nonmoving party.[25] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[26] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[27]

### B. LEI's *Motion for Partial Summary Judgment*[28]

LEI moves for summary judgment on Chem Carriers' claims for attorneys' fees;

---

[21] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[22] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[23] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

[24] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[25] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[26] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[27] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[28] Rec. Doc. No. 60.

the rudder repair costs; the portion of the unpaid charter hire that corresponds to days the M/V Miss Danielle was not in service; and the interest on the unpaid charter hire.[29]

    1.  <u>Chem Carriers' Claim for Attorneys' Fees</u>

LEI seeks summary judgment on Chem Carriers' claims for attorneys' fees under Louisiana's Open Account statute[30] and 28 U.S.C. § 1927.[31] As LEI argues, the Fifth Circuit has held that "the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fees statutes…to maritime contract disputes."[32] Therefore, summary judgment is granted as to Chem Carriers' claim under the Louisiana Open Account statute.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fifth Circuit has stated:

> Conduct is 'unreasonable and vexatious' if there is evidence of the 'persistent prosecution of a meritless claim' and of a 'reckless disregard of the duty owed to the court.' An attorney acts with 'reckless disregard' of his duty to the court when he, without reasonable inquiry, advances a baseless claim despite clear evidence undermining his factual contentions.[33]

LEI argues that Chem Carriers' claim under § 1927 fails because there is no evidence counsel for LEI has acted unreasonably or vexatiously. LEI also points out that

---

[29] See Rec. Doc. No. 60-1.
[30] La. R.S. 9:2781.
[31] Rec. Doc. No. 60-1, p. 2.
[32] *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir. 2003).
[33] *Morgan v. Walker*, 939 F.3d 633, 638 (5th Cir. 2019).

Chem Carriers asserted its § 1927 claim in its *Complaint*—before LEI's counsel had even made an appearance.[34] Chem Carriers does not directly address LEI's argument, and instead appears to assert that attorneys' fees are warranted under federal maritime common law. In any event, LEI is entitled to summary judgment on Chem Carriers' claims for attorneys' fees under § 1927 since Chem Carriers introduced no evidence to create a genuine issue of material fact as to whether LEI's counsel has acted unreasonably and vexatiously.

Chem Carriers asserts that under *Reliable Salvage & Towing v. 35' SEA RAY,*[35] a Middle District of Florida case, attorneys' fees may be awarded where the defendant "'deliberately, willfully, and persistently' fails to pay the plaintiff what is plainly owed to him."[36] LEI asserts that *Reliable Salvage* is distinguishable and that LEI legitimately disputes Chem Carriers' invoices and charter performance.[37]

As will become clear throughout this *Ruling*, LEI has mounted a colorable defense and asserted colorable counterclaims. There is no summary judgment evidence that LEI has "deliberately, willfully, and persistently" failed to pay Chem Carriers what it is "plainly owed." The Court sees no reason to depart from the general rule of maritime law that parties bear their own costs, and Chem Carriers has not created a genuine issue of material fact as to whether LEI failed to pay Chem Carriers what it is plainly owed. Summary judgment in favor of LEI is therefore appropriate on Chem Carriers' claim for attorneys' fees.

---

[34] Rec. Doc. No. 60-1, p. 6; Rec. Doc. No. 1, p. 4.
[35] 2011 WL 2418891, at *2 (M.D. Fla. June 13, 2011).
[36] Rec. Doc. No. 63, p. 2.
[37] Rec. Doc. No. 68, p. 3.

68792

2.  Chem Carriers' Claim for the Rudder Repair Costs

LEI seeks summary judgment on Chem Carriers' claim for the cost to repair the rudder of the M/V Miss Danielle. The damage occurred on April 13 in part due to high winds. LEI argues that the language of the charter agreement forecloses that claim,[38] specifically paragraph 19, which provides:

> [Chem Carriers] shall exercise complete navigational control of its Equipment to promptly execute such transportation requests and shall have the exclusive right to determine whether the ports and waterways, which must be navigated by [Chem Carriers] to execute [LEI's] transportation requests, are safe for navigation of [Chem Carriers'] tow at the time and within the navigation endorsements of applicable Coast Guard documents and navigation warranties of applicable insurance.[39]

LEI also cites the deposition testimony of several Chem Carriers employees.

Captain Daniel McCants, who was piloting the M/V Miss Danielle when the rudder damage occurred, admitted in his deposition that "[he] backed up too far…into the side of the channel" which caused the rudder damage.[40] Andrew Pritchard, whose role with Chem Carriers is not explained, testified in his deposition that it was Chem Carriers' decision to attempt the maneuver that led to the rudder damage, but he clarified that statement with the assertion that LEI's pressure on Chem Carriers forced it to attempt the maneuver.[41] Another Chem Carriers employee, Captain Rockie Pulse, who captained the M/V Miss Danielle at other times during the charter, testified in his deposition that he did not feel that anyone at Chem Carriers was pressuring him to move swiftly and that it is

---

[38] Rec. Doc. No. 60-1, p. 7.
[39] Rec. Doc. No. 1-2, p. 4–5.
[40] Rec. Doc. No. 60-7, p. 3–4.
[41] Rec. Doc. No. 60-8, p. 2–3.

68792

ultimately the captain's call whether or not to move the tow.[42] Based on the charter agreement and deposition testimony of Chem Carriers' employees, LEI asserts that Chem Carriers was at fault for the rudder damage.

Chem Carriers rebuts that LEI is liable for the rudder damage because LEI was rushing it to make a delivery window. Specifically, Chem Carriers cites the deposition testimony of Chem Carriers' owner, Frank Banta, who testified that: "[LEI was] the one[] rushing us. And the crew was moving for [LEI]. And because they were trying to move for [LEI] and that's how it went, that's why they bent this rudder."[43] In other words, because LEI was rushing Chem Carriers, Chem Carriers acted imprudently and damaged the rudder. Notably, the record also supports a finding that by April 13, LEI had begun withholding payments for invoices, which may have had a coercive effect on Chem Carriers' decision to attempt the maneuver in high winds.

In *Matter of P & E Boat Rentals, Inc.*,[44] the Fifth Circuit provided the general rule that "a time charterer who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise."[45] The court also noted an exception to that rule: this general rule does not exempt a time charterer from liability if it is negligent in conducting its activities as a time charterer."[46] The court then affirmed a judgment of negligence against Chevron, as time charterer, because Chevron had demanded that the owner of the vessel operate it at high speeds and in heavy fog.[47]

---

[42] Rec. Doc. No. 60-9, p. 2–3.
[43] Rec. Doc. No. 63-3, p. 4.
[44] 872 F.2d 642 (5th Cir. 1989).
[45] *Id*. at 647. (internal citations omitted).
[46] *Id*. (internal citations omitted).
[47] *Id*.

*Matter of P & E Boat Rentals, Inc.* controls, and summary judgment is inappropriate on this issue. Paragraph 19 provides Chem Carriers with "complete navigational control" of the vessel and does not limit LEI's liability, and the general rule is that LEI, as time charterer, would not be liable for damage to the vessel caused by Chem Carriers. However, *Matter of P & E Boat Rentals, Inc.* stands for the proposition that LEI may be liable if its actions as time charterer contributed to the damage to the rudder. Because Chem Carriers has proffered evidence that LEI may have pressured Chem Carriers into operating imprudently, Chem Carriers has demonstrated a genuine issue of material fact as to whether LEI may be liable for the damage to the rudder, and summary judgment is not appropriate on this claim.

3.  Chem Carriers' Claim for Unpaid Charter Hire for the Days the M/V Miss Danielle was not in Service

LEI seeks summary judgment on Chem Carriers' claim for unpaid charter hire as to the days that the M/V Miss Danielle was not in service. LEI asserts that it contracted with Chem Carriers for Chem Carriers to transport LEI's cargo, and since Chem Carriers failed to do so on 23 days throughout the charter, LEI should not have to pay for those days.[48] LEI points to the absence of a "hell or high water" clause in the charter agreement, which, if it was included in the charter agreement, would require LEI to pay the day rate for days that the M/V Miss Danielle was not in service.[49]

Chem Carriers rebuts that the charter agreement was per day and did not contain a per barrel or per gallon performance metric by which its conduct during the charter can

---

[48] Rec. Doc. No. 60-1, p. 7–10.
[49] *Id*. at 9.

be judged.[50] Chem Carriers also cites a 2007 "English Maritime Law Update" which describes an English case wherein the judge stated that "[t]he normal rule in respect of payment of hire under time charters is that the risk of delay is on the charterer, who remains liable to pay hire in all circumstances unless he can bring himself within the plain words of an off-hire provision."[51] Based on this and other favorable citations, Chem Carriers argues that the lack of a hell or high water clause is not fatal to its claims; rather, the lack of an "off-hire" clause, which would have allowed LEI to place the M/V Miss Danielle "off-hire" and not pay Chem Carriers for days it was dry-docked, is fatal to LEI's claims.[52]

A recent Eastern District of Louisiana case, *Drinnon Marine, L.L.C. v. Four Rivers Towing Alabama, L.L.C.*[53] is factually similar. In *Drinnon Marine, L.L.C.*, the plaintiff sued the defendant for unpaid charter hire.[54] As in this case, the charter agreement only specified a day rate.[55] The defendant asserted that the vessel was inoperable due to mechanical issues for much of the charter, so it should not have to pay for those days.[56] After a bench trial, the court found that "reductions from charter hire for an inoperable vessel are customary in the industry" and made commensurate deductions to the amount

---

[50] Rec. Doc. No. 63, p. 7.

[51] Jane Andrewartha, English Maritime Law Update: 2006, 38 J. Mar. L. & Com. 379, 384 (2007).

[52] Rec. Doc. No. 63, p. 6. Notably, English and American charter party law "are generally interchangeable." 2 Schoenbaum, Admiralty & Mar. Law § 11:1 (6th ed.). Schoenbaum, quoting Martin Davies, continues:
> While English law of charter parties is 'complex and sophisticated,' American law is 'stagnant but still interesting in places.' The rather 'moribund' nature of American charter party law, Davies points out, is due to the fact that most charter party disputes are resolved by arbitration and because it is generally difficult to obtain judicial review of arbitral awards in the United States. As a result, Davies perceptibly states, '[p]ropositions that have been refined in English law by a long series of cases are often established in US law by single decisions from over a hundred years ago.'" *Id.*

[53] 2021 WL 3048351 (E.D. La. 07/19/2021).

[54] *Id*. at *1.

[55] *Id*. at *4.

[56] *Id*. at *3–5.

of the charter hire that the defendant had to pay.[57]

The Court finds that summary judgment is inappropriate on this claim. Notably, there is no evidence of industry custom before this Court. Moreover, as noted above, fact issues remain as to which party is liable for at least some of the delays, such as those caused by the rudder damage. It would be fundamentally unjust if Chem Carriers could not recover the day rate for days the M/V Miss Danielle spent dry-docked if LEI negligently caused the damages that necessitated the repairs. Most importantly, there is a factual dispute as to whether 23 days in dry-dock is unreasonable and whether the delay constitutes a breach of Chem Carriers' duty to deliver the diesel within a reasonable time. These issues are considered in full below.[58] LEI's *Motion* is denied as to Chem Carriers' claims for unpaid charter hire on the days the M/V Miss Danielle was inoperable.

4.  Chem Carriers' Claim for Interest on the Unpaid Charter Hire

LEI also moves for summary judgment on Chem Carriers' claim for interest on all of the unpaid charter. Chem Carriers also moves for summary judgment on this issue, so the Court will analyze the *Motions* simultaneously. The charter agreement provides in relevant part, "[LEI] shall pay all of [Chem Carriers'] properly prepared and undisputed invoices within 30 days of [LEI's] receipt thereof. Any amounts due and not paid by [LEI] after 30 days shall be subject to a 1.5% per month interest charge…"[59] LEI argues that it has always disputed the invoices as evidenced by this case and cites the deposition testimony of Frank Banta, Chem Carriers' owner, wherein Banta agreed that the invoices

---

[57] *Id*. at * 6.
[58] See *infra*, B. 2.
[59] Rec. Doc. No. 1-2, p. 2.

were disputed.[60] LEI has therefore met its burden of producing evidence that there is no genuine issue of material fact as to whether the invoices were disputed. The burden shifts to Chem Carriers to produce evidence that there is a genuine issue of material fact as to whether LEI disputed the invoices.

Chem Carriers argues that LEI implicitly concedes that Chem Carriers is due some portion of the charter hire because LEI only seeks summary judgment on the portion of the unpaid charter hire attributable to days that the M/V Miss Danielle was dry-docked.[61] This argument ignores that LEI opposes Chem Carriers' *Motion* wherein Chem Carriers seeks summary judgment on its claim for all of the unpaid charter hire.[62] Chem Carriers cites to no evidence on this point besides LEI's *Motion*.[63]

Chem Carriers' argument based on LEI's *Motion* is insufficient. Moreover, the charter agreement contains no requirement that the invoices must be reasonably disputed. Therefore, even if LEI unreasonably disputed the invoices, Chem Carriers' claim for interest would still fail. For these reasons, Chem Carriers' claim for interest on the unpaid charter must be dismissed. LEI's *Motion*[64] is granted as to this claim, and Chem Carriers' *Motion*[65] is denied as to this claim.

### C. Chem Carriers' *Motion for Partial Summary Judgment*[66]

#### 1. Chem Carriers' Claim for the Unpaid Charter Hire

Chem Carriers seeks summary judgment on its claim for the balance of the unpaid

---

[60] Rec. Doc. No. 60-1, p. 10; Rec. Doc. No. 60-11, p. 3.
[61] Rec. Doc. No. 63, p. 8–9.
[62] Rec. Doc. No. 65, p. 5–17.
[63] To the extent LEI's *Motion* can be considered evidence.
[64] Rec. Doc. No. 60.
[65] Rec. Doc. No. 61.
[66] Rec. Doc. No. 61.

charter hire. Chem Carriers argues that the charter agreement set a per day rate—not a per barrel or per gallon performance metric.[67] Further, Chem Carriers points to paragraph 19 of the charter agreement which grants Chem Carriers "complete navigational control of its Equipment to promptly execute [LEI's] transportation requests" and grants Chem Carriers "the exclusive right to determine whether the ports and waterways…are safe for navigation of [the M/V Miss Danielle]…." Therefore, argues Chem Carriers, based on paragraph 19, LEI assumed the risk for delays and must pay the charter hire.[68] Finally, Chem Carriers asserts that paragraph 17 contains a broad waiver of Chem Carriers' liability.

LEI argues that Chem Carriers breached various duties and warranties, so LEI did not and does not have to perform under the charter agreement. LEI asserts that Chem Carriers breached: its implied and contractual duty of seaworthiness, implied warranty of workmanlike service, and obligation of good faith and fair dealing.[69] LEI asserts that paragraph 19 does contain a performance metric in that Chem Carriers must "promptly execute" LEI's transportation requests and that paragraph 19 imposes an obligation on Chem Carriers to control the M/V Miss Danielle.[70] Relatedly, LEI argues that Chem Carriers breached an implied duty to make delivery within a reasonable time.[71] LEI asserts that Chem Carriers' actions fall within exclusions to any waiver of liability in the paragraph 17.[72]

---

[67] Rec. Doc. No. 61-2, p. 10.
[68] *Id*. at 7; Rec. Doc. No. 1-2, p. 4.
[69] Rec. Doc. No. 65, p. 10–15.
[70] Rec. Doc. No. 65, p. 5.
[71] *Id*. at 6.
[72] *Id*. at 8.

68792

Courts typically employ federal common law to resolve maritime disputes.[73] The Fifth Circuit has looked to "general rules of contract law" when interpreting charter agreements.[74] In *Marine Overseas* the Fifth Circuit noted that "since most points of charter law involve construction of the charter, the principles are much the same as those of ordinary contract law."[75] The Court looked to the Restatement (Second) of Contracts for general principles of contract law.[76]

"[I]f a party in default under a contract is allowed to continue to perform, this precludes any right of the other party to rescind the contract or declare a material breach and refuse to perform further because of any known default that has already taken place."[77] However, "neither the obligation of the party in default nor its liability to pay damages for the defective performance is terminated."[78] These basic contract principles have been applied to maritime charters.[79]

LEI's argument that Chem Carriers breached and therefore LEI is excused from paying is fatally flawed. Applying the contract principles above, LEI would only be excused from payment if Chem Carriers breached and LEI did not allow Chem Carriers to continue performance. However, LEI claims that Chem Carriers' breach began in March 2019 and continued through April into May.[80] There is a factual dispute as to when Chem Carriers ceased performing. Chem Carriers argues that it performed through May, while LEI

---

[73] *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.1991).

[74] *Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1234 (5th Cir.1986).

[75] *Id.* (quoting G. Gilmore & C. Black, The Law of Admiralty § 4-1 at 196 (2d ed.1975)).

[76] *Id.*

[77] 14 Williston on Contracts § 40:1 (4th ed.) (citing Restatement (Second) Contracts § 246).

[78] *Id.* (citing *Louisiana Highway Commission v. Farnsworth*, 74 F.2d 910 (5th Cir. 1935)).

[79] *Natures Way Marine, LLC v. Everclear of Ohio, Ltd.*, 37 F. Supp. 3d 1232, 1243 (S.D. Ala. Aug. 12, 2014), *amended*, 2014 WL 5465885 (S.D. Ala. Oct. 28, 2014).

[80] Rec. Doc. No. 60-2, p. 2; Rec. Doc. No. 63-1, p. 3.

asserts that Chem Carriers ceased performance on May 17.[81] Regardless of exactly when in May Chem Carriers ceased performance, it is undisputed that it continued to perform well after it allegedly breached. Indeed, Chem Carriers' owner Frank Banta testified that when LEI complained about the performance of the charter, he offered to "release the tow early" so that LEI could bring in another tow." According to Banta, "'he,' either the broker or Steve McNear, the owner of LEI, replied, "'do the best you can.'"[82]

Chem Carriers has introduced summary judgment evidence that it continued to perform, at LEI's behest, after LEI asserts that Chem Carriers breached. LEI has failed to proffer summary judgment evidence that Chem Carriers did not continue to perform after the alleged breach. Therefore, LEI has failed to create a genuine issue of material fact as to this point, so Chem Carriers' *Motion* shall be partially granted as to its claim for the unpaid charter hire from March till May 17. Because the parties dispute when Chem Carriers' ceased performance, Chem Carriers' *Motion* is denied as to the charter hire for May 17 to May 31.

### 2. LEI's Claim for Lost Profits

Chem Carriers seeks summary judgment on LEI's claim for lost profits. Lost profits are available in maritime cases.[83] Chem Carriers argues that LEI is not entitled to lost profits because: (1) Chem Carriers did not breach; and (2) even if Chem Carriers did breach, paragraph 17 of the charter agreement insulates it from liability.

---

[81] Rec. Doc. No. 61-1, p. 2; Rec. Doc. No. 65-1, p. 1.
[82] Rec. Doc. No. 65-16, p. 3.
[83] *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 999 (5th Cir. 1984), *on reh'g*, 753 F.2d 378 (5th Cir. 1985).

*a. Interpretation of the Charter Agreement*

When interpreting a charter agreement, courts must read the charter as a whole and give its words their plain meaning.[84] Courts interpret charter agreements with the goal of ascertaining the intent of the parties.[85] Courts should interpret charter agreements to give effect to every word of the charter and avoid conflict between provisions.[86] "Clauses that purport to limit a party's legal responsibility are strictly construed and to be given effect must clearly express the intent of all parties whose liability is altered by the agreement."[87]

According to Chem Carriers, paragraph 17 limits Chem Carriers' liability. Paragraph 17, titled "Force Majeure," provides in relevant part:

> [1] The tug and its tow, its captain and [Chem Carriers] and operator shall not, unless otherwise in this Transportation Service Agreement especially provided, be responsible for any loss or damage arising from or resulting from any act, neglect, default, or barratry of the captain, pilots, mariners or of the servants of [Chem Carriers] in the navigation or management of the vessels, fire unless caused by the personal design and neglect of [Chem Carriers], collision, stranding or peril, danger or accident of navigable waters; saving or attempting to save life or property; wastage in bulk or any other loss, including leakage, ullage or jettison, or damage arising from inherent defect, or quality or vice of the Cargo, contamination of the Cargo, howsoever caused; any act or omission of the [LEI], [Chem Carriers], shipper, or consignee of the Cargo, their agents or representatives; insufficiency or inadequacy of marks, explosion, bursting of boilers, breakage of shafts or any latent defects in hull equipment or machinery; unseaworthiness of the tug or tow unless caused by want of due diligence on the part of [Chem Carriers] to make the tug or tow seaworthy or to have it properly manned, equipped and supplied at the inception of the voyage; or from any other cause of whatsoever kind unless caused by the actual fault and privity of [Chem Carriers]. [2] Neither the tug or tow, its captain [Chem Carriers] or operator shall, unless otherwise in this agreement expressly provided, be responsible for any loss, damage, *delay or failure in*

---

[84] *Mays v. C-Dive, L.L.C.*, 799 F. App'x 232, 234 (5th Cir. 2020).
[85] *The Rice Company (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528 (5th Cir. 2008).
[86] *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004); 22 Williston on Contracts § 58:10 (4th ed.).
[87] Bosnor, S.A. de C.V. v. Tug L.A. Barrios, 796 F.2d 776, 781 (5th Cir. 1986).

*performing hereunder arising or resulting from*: [long list of typical force majeure causes].[88]

Paragraph 17 contains two broad limitations of liability. The first is indicated by the [1] above and limits Chem Carriers' liability for "any loss or damage arising from or resulting from…". The second is indicated by the [2] above and limits Chem Carriers' liability for "any loss, damage, delay or failure in performing hereunder arising from or resulting from:…" Since [2] includes the additional words "delay or failure in performing hereunder" and [1] does not, the Court may infer that [1] does not contain a limitation of Chem Carriers' liability for delays or failures to perform.

This conclusion is buttressed by the fact that if [1] did not contain a narrower limitation of liability than [2], then the catch-all "from any other cause of whatsoever kind unless caused by the actual fault and privity of [Chem Carriers]" at the end of [1] would render [2] unnecessary and hence meaningless. Therefore, the Court finds that "loss or damage" in [1] does not include delays or failures to perform. Because LEI seeks damages stemming from Chem Carriers' delay or failure to perform, [1] of paragraph 17 does not limit Chem Carriers' liability in this case. Additionally, none of the causes in [2] apply in this case. Therefore, paragraph 17 does not limit Chem Carriers' liability in this case.

### b. *Chem Carriers' Purported Breaches*

LEI asserts that Chem Carriers breached: the warranty of seaworthiness, the implied warranty of workmanlike service, the obligation of good faith and fair dealing, and a contractual and common law duty to deliver LEI's diesel in a reasonable time.

---

[88] Rec. Doc. No. 1-2, p. 4. (emphasis added).

"Maritime law infers a general warranty of seaworthiness from a charter-party agreement even where such warranty is not expressly made."[89] The default rule is that unseaworthiness imposes a form of strict liability on the owner of the vessel, regardless of fault.[90] This may be modified by a "due diligence" clause in the charter.[91]

Chem Carriers argues that paragraph 17 imposes a due diligence requirement. Chem Carriers is correct, however, that requirement only applies to [1] of paragraph 17, which the Court has already concluded does not apply to the instant case. As such, the Court applies the general maritime law implied warranty of seaworthiness.

Seaworthiness is "a relative term depending upon its application to the type of vessel and the nature of the voyage. The general rule is that the vessel must be staunch, strong, and well-equipped for the intended voyage and manned by a competent crew and skillful master of sound judgment and discretion."[92] A seaworthy vessel is one which is "reasonably suited for the purpose or use for which [it was] intended."[93] "The implied warranty of seaworthiness applies when the vessel sails from the loading port and arises anew at each stage of the voyage."[94]

LEI asserts that Chem Carriers breach its warranty of seaworthiness in several ways. First, LEI asserts that the M/V Miss Danielle was not in good repair, citing the rudder failure and other unspecified equipment issues.[95] Second, LEI argues that the crew that Chem Carriers supplied was unable to navigate the windy route because of lack of

---

[89] *Horn v. Cia de Navegacion Fruco*, 404 F.2d 422, 428 (5th Cir.1968).
[90] *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549–50 (1960).
[91] Schoenbaum, *supra*, § 11.8.
[92] *Id.*
[93] *In re Signal Int'l, LLC*, 579 F.3d 478, 489 (5th Cir. 2009).
[94] Schoenbaum, *supra*, § 11.8.
[95] Rec. Doc. No. 65, p. 11.

experience and skill.[96] LEI asserts that Chem Carriers did nothing to ensure that the crew was capable of running the route. Third, LEI contends that Chem Carriers' failure to install a bow thruster, which apparently would have reduced the effects of the wind, made the M/V Miss Danielle unseaworthy.[97] Fourth, LEI argues that the M/V Miss Danielle had inadequate horsepower for the route.[98]

Chem Carriers argues that "'under a charter agreement, only "want of due diligence on the part of the owner can impose liability for unseaworthiness,"'" citing *Natures Way Marine, LLC v. Everclear of Ohio, Ltd.*,[99] a Southern District of Alabama case. *Natures Way* cited a Fourth Circuit case, *Hampton Roads Carriers, Inc. v. Allied Chemical Corp.*[100] However, the *Hampton Roads* court actually stated that, "under *the* charter [agreement], as we have noted, only want of due diligence on the part of the owner can impose liability for unseaworthiness."[101] The Fourth Circuit had already concluded that the charter agreement in that case contained a due diligence clause.[102] Therefore, the court was not providing a statement of general maritime law. As such, the rule statement in *Natures Way* is incorrect, and the Court will apply maritime law's traditional unseaworthiness doctrine that does not require proof of fault.

Chem Carriers also contends that LEI's arguments as to unseaworthiness are illogical because the M/V Miss Danielle successfully ran the route during the first two

---

[96] *Id*. at 11–12.
[97] *Id*. at 12.
[98] *Id*. at 13.
[99] *Natures Way Marine, LLC v. Everclear of Ohio, Ltd.*, 37 F. Supp. 3d 1232, 1241 (S.D. Ala. Aug. 12, 2014), amended, 2014 WL 5465885 (S.D. Ala. Oct. 28, 2014).
[100] *Hampton Roads Carriers, Inc. v. Allied Chem. Corp.*, 329 F.2d 387, 388 (4th Cir. 1964).
[101] *Id*. at 391 (emphasis added).
[102] *Id*. at 388. "The Vessels employed herein, the respective master and Owner shall not be responsible for any loss or delay arising or resulting from unseaworthiness of the Vessel or Vessels whether existing at the beginning of the voyage or developing during the voyage unless caused by want of due diligence on the part of the Owner to make the Vessel seaworthy." *Id*.

months of the charter with the same crew and no bow thruster.[103] However, because the warranty of seaworthiness arises anew at each stage of the voyage, the M/V Miss Danielle could have been seaworthy in January and February but not seaworthy during other times of the charter.

LEI introduces sufficient summary judgment evidence to create a genuine issue of material fact as to seaworthiness in the form of the declaration of its purported expert witness, Captain Sean Hogue. Hogue states that a bow thruster should have been installed and a vessel with higher horsepower should have been used.[104] Seaworthiness is a question of fact usually considered at trial,[105] and the M/V Miss Danielle's seaworthiness must be considered at trial. Summary judgment on this theory of breach is denied.

LEI argues that Chem Carriers breached the implied warranty of workmanlike service.[106] Chem Carriers rebuts that this warranty has never been extended to arguments over delays in a time charter.[107]

Courts have applied an implied warranty of workmanlike service to a wide variety of maritime service contracts including: "repairs, offshore service contracts, contracts to provide tug assistance, launch service contracts, and stevedoring contracts."[108] The warranty stems from "the hornbook rule of contract law that one who contracts to provide services impliedly agrees to perform in a diligent and workmanlike manner."[109] Although

---

[103] Rec. Doc. No. 66, p. 6.
[104] Rec. Doc. No. 65-5, p. 3–7.
[105] *Becker v. Tidewater, Inc.*, 586 F.3d 358, 368 (5th Cir. 2009).
[106] Rec. Doc. No. 65, p. 14.
[107] Rec. Doc. No. 66, p. 7.
[108] See 1 Schoenbaum, Admiralty & Mar. L. § 5:15 (6th ed.).
[109] 2 *Id.* § 12:4.

the parties debate whether the warranty applies to charter agreements, the Court finds that it need not reach the issue.

If the charter agreement incorporated an implied warranty of workmanlike performance, that warranty would be co-extensive with the duty to make delivery within a reasonable time, discussed below. The object of the charter agreement was the successful delivery of LEI's diesel. Any implied duty of workmanlike performance would not impose an additional metric besides reasonable time because that is the only metric that matters in this case. In other words, the implied warranty of workmanlike service is redundant in this case—if applicable at all.

LEI argues that Chem Carriers breached its obligation of good faith and fair dealing. All maritime contracts impose an obligation of good faith and fair dealing between the parties in its performance and enforcement.[110] "'[T]he obligation of good faith and fair dealing is not breached merely by the failure to perform a particular obligation. A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith.'"[111]

LEI asserts that Chem Carriers "evaded the spirit of the contract by failing to diligently transport [LEI's] product because that was the entire purpose of the agreement."[112] Chem Carriers points out that LEI has produced no evidence that Chem Carriers acted in bad faith or with malice. Indeed, there is no such evidence before the Court. Chem Carriers must prove a negative, so the lack of evidence is fatal to LEI's claim

---

[110] *Comar Marine Corp. v. Raider Marine Logistics, L.L.C.*, 2013 WL 2181036, at *14 (W.D. La. May 20, 2013), aff'd, 792 F.3d 564 (5th Cir. 2015).
[111] *Id*. (quoting *Dufrene v. Browning–Ferris, Inc.*, 1997 WL 587765, 2 (E.D. La. Sept. 23, 1997).
[112] Rec. Doc. No. 65, p. 15.

for breach of the obligation of good faith and fair dealing because LEI has not produced evidence sufficient to create a genuine issue of material fact as to whether Chem Carriers acted in bad faith. Therefore, summary judgment is granted as to this theory of breach in favor of Chem Carriers.

Finally, and most importantly, LEI argues that Chem Carriers had a duty to make delivery within a reasonable time. Paragraph 19 provides in relevant part, "[Chem Carriers] shall exercise complete navigational control of its Equipment to promptly execute such transportation requests…." This clause assumes that Chem Carriers had a duty to promptly execute LEI's transportation requests. Moreover, maritime law imposes upon Chem Carriers a duty to make delivery within a "reasonable time."[113]

Whether Chem Carriers made delivery within a reasonable time is a question of fact. The factfinder must consider all of the circumstances to determine whether Chem Carriers' speed was reasonable. Chem Carriers cites Banta's deposition testimony that the pilots were "try[ing] to do their best for [LEI]."[114] Likewise, Andrew Pritchard, who is apparently a Chem Carriers employee, testified that there was nothing that Chem Carriers "could've done differently to [] make this go faster or get more trips."[115] LEI rebuts with the testimony of its proffered expert, Captain Hogue, who asserts that Chem Carriers could have completed additional trips had it made different decisions.[116] Chem Carriers objects to Captain Hogue's declaration as replete with legal conclusions, but even stripped of its legal conclusions, the declaration creates a genuine issue of material fact

---

[113] *Lafarge Corp. v. M/V MACEDONIA HELLAS*, 2000 WL 687708, at *8 (E.D. La. May 24, 2000); see also *Hall v. Hurlbut*, 11 F. Cas. 228, 231 (C.C.D. Md. 1858).
[114] Rec. Doc. No. 63-3, p. 4.
[115] Rec. Doc. No. 60-8, p. 2.
[116] Rec. Doc. No. 65-5, p. 5.

as to whether Chem Carriers made deliveries within a reasonable time. Summary judgment is denied on this theory of breach.

## III.    CONCLUSION

LEI's *Motion* is granted as to Chem Carriers' claims for attorneys' fees and interest on the unpaid charter hire but denied as to Chem Carriers' claims for the rudder repair costs and day rate for days that the M/V Miss Danielle was dry docked or otherwise not in service. Chem Carriers' *Motion* is granted as to its claim for the unpaid charter hire, excluding the day rate for May 17 to May 31, but denied as to its claim for interest on the unpaid charter hire and LEI's claim for lost profits.

For the foregoing reasons, LEI's *Motion*[117] is **GRANTED in part and DENIED in part.** For the foregoing reasons, Chem Carriers' *Motion*[118] is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 10, 2021</u>.


_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[117] Rec. Doc. No. 60
[118] Rec. Doc. No. 61.


68792